UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION

| | |
|---|---|
| REBECCA FORD-ALLEMAND, individually and on behalf of all others similarly situated, *Plaintiff*, v. PIEDMONT NATURAL GAS COMPANY, INC. *Defendant*. | Civil Action No. 1:20-cv-00192-MRB Judge Michael R. Barrett Magistrate Judge Stephanie K. Bowman |

**CLEVELAND INTEGRITY SERVICES, INC.'S  MOTION TO INTERVENE**

**I.      INTRODUCTION**

Rebecca Ford-Allemand ("Allemand") brings suit under the Fair Labor Standards Act ("FLSA") and parallel Ohio employment statutes contending that Piedmont Natural Gas Company, Inc. ("Piedmont") denied her overtime pay.  Allemand, however, was employed by and paid by Cleveland Integrity Services, Inc. ("CIS"), which assigned her to work for its customer, Piedmont.  Yet, Allemand's lawsuit pointedly excludes her actual employer from her purely employment claim.

Allemand's omission in this case needs to be rectified.  As Allemand's employer, CIS determined the central issue in this case: her pay.  Plus, Allemand executed an arbitration agreement as a condition of her employment *with CIS,* which she now attempts to evade through selective pleading.

CIS, accordingly, moves to intervene pursuant to Federal Rule of Civil Procedure 24.

## II. FACTUAL CONTEXT

### A. CIS's Relationship with Piedmont

CIS employs inspection personnel to provide third-party inspection services to its customers. (*See* Frye Declaration at ¶ 3, attached as Exhibit 1.)  This is comparable to a CPA firm sending auditors to its clients.  In both instances, there is a compelling logic for having truly independent inspections done.

> Pipeline inspectors, like auditors, are hired to work independently:
>
> The Inspector acts as the Owner Company's authorized representative for non-financial matters, continuously observes the Contractor's progress and monitors all activities in their assigned areas in accordance with codes and standards; regulatory requirements; Owner Company safety and environmental requirements, drawings, plans, and specifications; as well as the terms of the construction contract or agreement. The Inspector may also be asked to assist other specialized Inspectors (e.g., Welding Inspector), as directed.

CEPA Foundation and the INGAA Foundation, <u>A Practical Guide for Pipeline Instruction Inspectors</u> 11 (Mar. 2016), https://www.cepa.com/wp-content/uploads/2016/11/A-Practical-Guide-for-Pipeline-Construction-Inspectors-16Mar2016-FIN...1.pdf.  And, because this work requires specialized personnel for only the duration of the project, these assignments are for a finite period.  This is another reason that CIS customers outsource pipeline inspection work.

Piedmont is one of CIS's customers. (*See* Frye Declaration at ¶ 4.)  Relevantly, Piedmont engaged CIS to provide third-party inspection services for its Cincinnati project in Cincinnati, Ohio. (*See id.* at ¶¶ 5, 10.)  Piedmont pays CIS a stipulated rate to compensate for the services CIS provides.  This rate was all-inclusive, meant to cover overhead, profit, equipment, material, wages, benefits, vehicle allowance and applicable taxes and withholdings under state and federal law.  CIS then pays its inspectors in a manner that it alone determines. (*See id.* at ¶ 6.)

### B. CIS's Employment of Allemand

CIS employed Allemand and assigned her to provide inspection services to CIS's client Piedmont. (*See id.* at ¶ 9.) On August 2, 2018, CIS assigned Allemand as a Safety Inspector to its team providing services to Piedmont in Cincinnati. (*See id.* at ¶¶ 9–10.) Allemand worked exclusively in Cincinnati during this assignment. (*See id.* at ¶ 10.)

While employed at CIS, Allemand signed at least thirteen separate documents that identified her as an employee of CIS. (*See* Frye Declaration, Exs. A–C, F–M, O–P.) These documents included acknowledgments that Allemand would comply with CIS's policies governing employee conduct:

- Frye Declaration, Ex. F (Allemand's Acknowledgement of CIS's Safety Handbook);
- Frye Declaration, Ex. G (Allemand's Acknowledgement of CIS's Drug and Alcohol Policy);
- Frye Declaration, Ex. H (Allemand's Acknowledgement of CIS's Incident and Injury Reporting Policy);
- Frye Declaration, Ex. I (Allemand's Acknowledgement of CIS's Employee Driving Policy);
- Frye Declaration, Ex. J (Allemand's Acknowledgement of CIS's Workers' Compensation Notice).

Allemand executed an arbitration agreement as a condition of her employment. (*See* Frye Declaration at ¶ 7.) Under that arbitration agreement, Allemand committed to

> arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company regardless of whether those are claims under common law or statutory law.

(*See* Frye Declaration, Ex. A at ¶ 2.) The agreement also included a provision waiving Allemand's right to pursue any "class actions, collective actions, or multiple-employee claims of any kind." (*See id.*) Finally, the agreement provides that "[a]rbitration shall be conducted in accordance with

3

the American Arbitration Association Employment Arbitration Rules ('AAA Rules')." (Frye Declaration, Ex. A at ¶ 4.)

CIS assigned Allemand to provide services on its behalf to Piedmont in Cincinnati from August 2, 2018 until November 7, 2018. For her work in those three plus months, CIS paid Allemand $25,384.80 in gross wages. (*See* Frye Declaration at ¶ 14.) CIS remitted all corresponding payroll taxes to the relevant federal and state governments under CIS's own Federal Employment Identification Number. (*See id.*; Frye Declaration, Ex. Q.)

During the time that Allemand worked at Piedmont's Cincinnati project in Cincinnati, Ohio, Allemand was undeniably employed by CIS.

### III. ARGUMENT

Allemand's lawsuit alleges that she was denied statutory overtime pay under federal and state employment statutes. The central issue is her assertion that expense reimbursement and per diem fees were omitted from her overtime rate calculation. *Complaint* at ¶ 2. Whether Allemand's allegation is valid does not change the fact that the payment and calculation of her overtime was exclusively CIS's decision.

But, rather than suing CIS—the entity that hired her, that calculated her overtime rate, and that paid her—Allemand sues *only* the customer to which she was assigned but that neither paid her nor determined how much she was paid: Piedmont. Even though Allemand leaves CIS unnamed in her Complaint, her allegations against Piedmont are unavoidably directed against CIS.

Piedmont did not hire Allemand, did not establish her compensation package, did not make requisite payroll contributions to state and federal taxing authorities, and did not write or control her paychecks. The reality of Allemand's Complaint is that she asserts that Piedmont might be a

4

joint employer *with CIS*. That is her only route to holding Piedmont liable for the alleged violations of the FLSA and Ohio law.

Allemand may wish to allege that Piedmont was her joint employer but that cannot and does not alter CIS's undeniable interest as her primary employer in intervening in this case to defend against Allemand's claim challenging CIS's calculation of her overtime pay. Further, Allemand's tactic of suing only Piedmont is simply an attempt to avoid her arbitration agreements; permitting this lawsuit to go forward without CIS's participation would deprive CIS of these interests.[1]

To protect its interests, CIS moves to intervene pursuant to both Federal Rule of Procedure 24(a)(2) and Federal Rule of Civil Procedure 24(b)(1)(B).

### A. Rule 24(a)(2): Intervention As Of Right

Rule 24 allows the intervention as of right of anyone who timely "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may **as a practical matter** impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). As a practical matter, CIS—Allemand's actual employer—has such an interest.

*Robertson v. Enbridge (U.S.) Inc.*, No. 2:19-cv-01080-WSS-LPL, Dkt. 98 (W.D. Pa. Apr. 13, 2020) (attached as Exhibit 2) is illustrative. There, Allemand's attorneys took the same tactic: bringing an FLSA lawsuit against a customer of CIS. The magistrate judge there rightly concluded that CIS had a sufficient interest in the litigation because

---

[1] Pursuant to Federal Rule of Civil Procedure 24(c), CIS attaches as Exhibit 4 its motion to compel arbitration, seeking to enforce its bargain with Allemand. *See, e.g.*, *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 414 (W.D. Pa. 2006) (motion to compel arbitration satisfies Rule 24(c)). CIS will file this motion immediately upon the Court's approval of its intervention.

5

> They hired the subject employees, they determined how much to pay them, and they determined that they were exempt from overtime pay. The[y] provided the employees to the named Defendant. The potential Intervenors appear at this stage to fit at least three out of the four relevant factors of being qualified as joint employers with Enbridge under the Third Circuit's definition. Regardless of the indemnity issue, which the Court finds does not have to be proven at this time, they have stated a sufficient interest in the litigation. In addition, these potential employees, and others who may opt in later, have either agreed to a forum selection clause or an arbitration agreement, both of which are being circumvented given that a joint employer of theirs w[as] not named.

*Id*. at 6.

Similarly, in *Snow v. Silver Creek Midstream Holdings, LLC*, No. 2:19-cv-00241-ABJ, Dkt. 30 (D. Wyo. Mar. 3, 2020) (attached as Exhibit 3), the court granted intervention to another pipeline inspection services company in an FLSA lawsuit against its customer brought by Allemand's attorneys. The logic for that ruling also applies here: "The Court finds the potential for Silver Creek [customer] to claim Applied [employer / inspection services company] is Plaintiff's sole employer, or even a joint employer, establishes a protectable interest." *Id*. at 6.

The Sixth Circuit has distilled Rule 24(a)(2) into four parts, explaining that a proposed intervenor must establish "(1) that the motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the case; (3) that their ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent their interest." *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999). The requirements of Rule 24 are "broadly construed in favor of potential intervenors." *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991). Here, CIS meets all four requirements.

**First**, CIS's motion, filed before the start of discovery, is timely; intervention at this early stage of the litigation does not unduly delay or prejudice Allemand's or Piedmont's rights. *See, e.g.*, *Wilkins v. Daniels*, No. 2:12-cv-1010, 2012 WL 6015884, at *2 (S.D. Ohio Dec. 3, 2012 (intervention timely where the case was "still in its early stages").

6

**Second**, CIS has a substantial legal interest in this case on multiple levels that more than satisfy the Sixth Circuit's "rather expansive notion of the interest sufficient to invoke intervention of right." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).

**i.** The central issue in this case is whether Allemand's overtime rate was properly calculated. CIS has an interest in the adjudication of this issue because it set and controlled her pay. Put differently, CIS's "conduct is part and parcel of the alleged wrongdoing asserted by Plaintiff." *Bagne v. JP Morgan Chase Bank, N.A.,* No. 08-cv-13646, 2008 WL 11355527, at *4–5 (E.D. Mich. Dec. 31, 2008) (granting intervention as of right where the plaintiff alleged that JP Morgan Chase Bank unlawfully purchased securities on her behalf through the proposed-intervenor, JP Morgan Securities, Inc.).

Further, any resulting liability is joint and several among joint employers. *See* 29 C.F.R. § 791.2(f) ("For each workweek that a person is a joint employer of an employee, that joint employer is jointly and severally liable with the employer and any other joint employers for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions, for all of the hours worked by the employee in that workweek."). The potential that CIS, Allemand's employer, may be jointly liable with Piedmont (if Allemand is able to show Piedmont also employed her) is a legally sufficient interest for intervention. *Kansas Public Emps. Retirement Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304 (8th Cir. 1995) (granting intervention; the potential of joint and several liability was sufficient to allow intervention).

**ii**. CIS not only has an interest in vindicating its proper overtime calculation for Allemand but also has a distinct interest in enforcing Allemand's arbitration agreement. *Bagne*, 2008 WL 11355527, at *4 (determining that intervention as of right was necessary where denial of intervention "could potentially result in the resolution of the instant action in court, instead of

the contracted arbitral forum"). Moving forward without CIS could result in Allemand being able to avoid the arbitration forum in which she committed to bring her individual employment claims. This would deprive CIS of the benefit of the bargain it struck with Allemand: in exchange for employing her and paying her significant compensation, CIS assured itself of "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).

      **iii**.    CIS has a further interest because Piedmont has demanded indemnification for Allemand's claims. (*See* Frye Declaration at ¶ 17.) An intervenor has a sufficient interest where it may be required to indemnify its customer. *See, e.g., Estate of Siemen ex rel. Siemen v. Huron Med. Ctr.*, No. 11-11249-BC, 2012 WL 909820, at *4 (E.D. Mich. Mar. 16, 2012) (granting intervention as of right where, if the defendant were to be found liable, the defendant "may seek indemnification" from the proposed-intervenor for the judgement); *Vasandani v. Dublin Green Condominium Owners' Ass'n, Inc.*, No. 2:14-cv-0059, 2014 WL 2695499, at *2 (S.D. Ohio June 13, 2014) (determining that the proposed-intervenor was entitled to intervention as of right where it "could be liable to indemnify Defendants" if the plaintiff prevailed in her claims and "could be collaterally estopped from re-litigating facts decided in this case" in another action).

      **Third**, disposing of this action without CIS would impair those interests. Most pointedly, CIS's ability to defend against Allemand's claims that her compensation ran afoul of the FLSA would be limited **as a practical matter**. If CIS—the entity that set and calculated the overtime rate on which her case is predicated—is excluded, it would be deprived of the "opportunity to raise arguments and defenses." *Clean Earth, Inc. v. Endurance Am. Ins.*, No. 15-6111(FLW), 2016 WL 5422063, at *4 (D.N.J. Sept. 28, 2016) (allowing a general contractor to intervene in a lawsuit brought by a sub-contractor against the general contractor's insurer; intervenor's interest could not

8

otherwise be protected since it is not enough that the general contractor "has an opportunity to defend against an indemnification claim by [the insurer]").

**Fourth**, CIS's interest is not adequately represented by the existing parties. Piedmont lacks the records and witnesses to defend an employment claim from an individual that it never employed. Piedmont did not hire Allemand, assign her to the position of Safety Inspector, determine Allemand's overtime rate, nor write her paychecks. CIS's "superior understanding" of its overtime calculation for Allemand and "greater access to relevant documents and individuals may result in [its] interests being inadequately represented" if it is not allowed to intervene. *Advanced Dynamic Interfaces, L.L.C. v. Aderas Inc.*, C.A. No. 12-cv-963 (GMS), 2013 WL 6989428, at *1 n.1 (D. Del. Jan. 11, 2013) (determining that a company could intervene as of right in a patent suit brought against its customer because the company was the creator and manufacturer of the products at issue).

Moreover, CIS's interests diverge from those of Piedmont because Piedmont has demanded indemnity of CIS. Thus, there is "the distinct possibility" that Piedmont and CIS "may point the proverbial finger at one other" at some point in the litigation (*Snow*, Dkt. 30, at 8) or may have an incentive to settle (rather than press a full defense of CIS's pay practices) and stick CIS with the bill. *See Morocco v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. Civ.A. 2:03-CV-523, 2003 WL 22327825, at *3 (S.D. Ohio Oct. 9, 2003) ("Because it appears that any judgment against [the defendant] will ultimately be borne, from a financial stand point, by [the proposed-intervenor], this Court concludes that [the defendant's] representation of [defendant's] interests may be inadequate.").

### B. Rule 24(b): Permissive Intervention

Even if there could be doubt about intervention as of right, CIS is entitled to intervene as a matter of permission on those same considerations. Rule 24(b)(1)(B) allows permissive intervention to anyone who timely asserts "a claim or defense that shares with the main action a common question of law or fact." Both are met here.

There are undeniably **common questions of law**: *e.g.*, the enforcement of Allemand's arbitration commitment. That common issue in and of itself warrants intervention. *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 27 (D.D.C. 2002) (granting permissive intervention in a trade secrets suit to the customer of both parties where the lawsuit questioned whether the customer conspired with the defendant to disclose trade secrets because, in part, the customer and the plaintiff had an arbitration agreement and both the customer and defendant argued that arbitration should be compelled); *Robertson*, Dkt. 98 at 10 (determining whether a court is the proper forum for an FLSA claim given the arbitration clause that the alleged joint employer agreed to with the plaintiff is a common question of law).

There are also **common questions of fact**. The central issue in this suit is whether Allemand's overtime calculation was proper under the FLSA and Ohio law. These questions cannot be resolved without addressing the actions of CIS, which established her overtime rate and paid her wages. CIS asserts a defense—that it properly calculated Allemand's overtime rate—that shares common facts with any argument Piedmont may make on the merits. *Robertson*, Dkt. 98 at 11 (deciding that "[a]ny determination that Enbridge [the sued customer of CIS] violated the law would be based on a joint employment relationship, which would implicate the potential Intervenors" such that there are common question of fact weighing in favor of permissive intervention).

Put differently, a full airing of the facts upon which liability depends is not possible without the participation of Allemand's actual employer. *Snow*, Dkt. 30, at 10 (determining that allowing the actual employer—also an inspection services company—in an FLSA suit brought against that company's customer "adds value and significantly advances the full and complete development of the factual and legal issues raised in the underlying action"); *see also Lexington Streetsboro, LLC v. Geis*, No. 5:07CV02450, 2008 WL 5723491, at *3 (N.D. Ohio Feb. 22, 2008) (granting intervention permissively where "the relationships between the various parties and the claims in this case arise from the common nucleus of operative fact surrounding" the subject matter of the lawsuit).

### IV. CONCLUSION

For these reasons, CIS should be allowed to intervene in this case.

Date: April 28, 2020

Respectfully submitted,

Cleveland Integrity Services, Inc.

/s/ Evelyn P. Schonberg
Evelyn P. Schonberg (0020176)
Ross, Brittain & Schonberg Co., L.P.A.
6480 Rockside Woods Blvd South
Suite 350
Cleveland, OH 44131
(216) 643-4505 (phone)
(216) 447-1554 (fax)
lynns@rbslaw.com

Rachel B. Cowen, *pro hac vice forthcoming*
McDermott Will & Emery LLP
444 West Lake Street
Chicago, Illinois 60606
(312) 372-2000 (phone)
(312) 984-7700 (fax)
rcowen@mwe.com

DM_US 168127360-2.105270.0030

**CERTIFICATE OF SERVICE**

      The undersigned does certify that on the 28th day of April 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

      /s/ Evelyn P. Schonberg
      Evelyn P. Schonberg (0020176)