# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| REBECCA FORD-ALLEMAND, individually and on behalf of all others similarly situated, <br>     Plaintiff, <br><br> v. <br><br> PIEDMONT NATURAL GAS COMPANY, INC., et al. <br>     Defendants. | CASE No. 1:20-cv-00192-MRB <br><br> JUDGE MICHAEL R. BARRETT |

## OPINION & ORDER

This matter is before the Court on Defendant Piedmont Natural Gas Company, Inc.'s ("Piedmont") Motion to Compel Arbitration and request to stay all proceedings (Doc. 12) and Intervenor Defendant Cleveland Integrity Services, Inc.'s ("CIS") Motion to Compel Arbitration and request to stay all proceedings (Doc. 27). Plaintiff Rebecca Ford-Allemand filed Responses in Opposition. (Docs. 16, 28). Piedmont and CIS filed Replies. (Docs. 18, 29).

This matter is also before the Court on Piedmont's Motion for Leave to File Supplemental Authority (Doc. 30) and Motion for Leave to File a Surreply (Docs. 31, 33). Plaintiff did not respond to these motions, and the time to respond has now passed. *See* S.D. Ohio Civ. R. 7.2(a)(2). The Court will grant the unopposed Motions for Leave, and consider the arguments presented in the attachments thereto.

I.   **BACKGROUND**[1]

CIS is an inspection services company that hires, employs, and assigns inspection personnel to provide independent inspection oversight to its customers, *i.e.*, to other companies. (Doc. 12-1 Michael Frye Decl. ¶ 3). CIS hired Plaintiff on July 31, 2018. (*Id.* ¶ 7). On August 2, 2018, CIS assigned Plaintiff to a three month project to provide services to Piedmont—an electric power holding company that is one of CIS's customers—as a Safety Inspector, and Plaintiff worked on that assignment through November 7, 2018. (Doc. 1 ¶ 27); (Doc. 12-1 Frye Decl. ¶¶ 4, 9); (*id.* Ex. D PageID 64); *see* (Doc. 1 ¶ 28).

On July 31, 2018, Plaintiff and CIS entered into a Mutual Arbitration Agreement ("Arbitration Agreement") as part of Plaintiff's employment with CIS. (Doc. 12-2 Frye Decl. Ex. A PageID 55-57). The Agreement provides, in part:

> Both Cleveland Integrity Services, Inc. ("Company") and you ("Employee") agree to the terms and conditions of this Mutual Arbitration Agreement ("Agreement") as an efficient, impartial and cost-effective dispute resolution procedure.
>
> **1. Mutual Agreement**
>
> This Agreement covers all claims by the Employee against the Company or by Company against the Employee. All references to "Employee" include his or her estate or other representatives; all references to "Company" include its affiliates or agents.
>
> The Employee and the Company each knowingly and voluntarily waive any and all rights to a trial before a judge or jury in a court of law and instead agree to proceed exclusively in arbitration on claims covered by this Agreement.

---

[1] The Court emphasizes that the background information detailed in this section is not binding at this juncture. *Cf. Doe v. BMG Sports, LLC*, No. 1:20-CV-688, 2022 WL 345178, at *1 (S.D. Ohio Feb. 4, 2022) (motion to amend); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (motion for preliminary injunction).

2

> **2. Claims Covered**
>
> The Employee and the Company agree to arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company regardless of whether those are claims under common law or under statutory law. The only exceptions are (a) claims for which arbitration is unavailable as a matter of law, such as workers' compensation benefits, unemployment compensation benefits, or charges under the National Labor Relations Act; (b) claims under any ERISA plan that contains its own internal appeal process; and (c) claims for injunctive relief pending the outcome of arbitration by either the Employee or the Company.
>
> The Employee and the Company also agree that there shall be no class actions, collective actions, or multiple-employee claims of any kind. Rather, each arbitration will be limited to a single employee; the arbitrator may not consolidate more than one person's claims for any purpose.
>
> . . .
>
> **4. Arbitration Procedures**
>
> Arbitration shall be conducted in accordance with the American Arbitration Association Employment Arbitration Rules ("AAA Rules"). The parties shall use one arbitrator for each case, who will be selected under the AAA Rules.
>
> . . . .

(*Id.* PageID 56). Plaintiff and CIS are signatories to the Arbitration Agreement. (*Id.* PageID 57). Piedmont is not a signatory thereto. (*Id.*)

On March 5, 2020, Plaintiff filed her Complaint against Piedmont for overtime wages under the Fair Labor Standards Act ("FLSA") and parallel Ohio statutes. (Doc. 1). She brings her claims on her own behalf and as a putative FLSA collective and state law class action. (*Id.*) Her Complaint does not reference CIS. (*Id.*) In response, Piedmont filed a Motion to Compel Arbitration. (Doc. 12). CIS filed a Motion to Intervene and argued, inter alia, that intervention as a right was proper in light of CIS's status as Plaintiff's employer, the Arbitration Agreement between Plaintiff and CIS, and the fact that Piedmont

3

has demanded indemnification from CIS in connection with this lawsuit. (Doc. 13); *see* (Doc. 12-1 Frye Decl. ¶ 17). The Court granted CIS's Motion to Intervene (Doc. 26), and CIS subsequently filed its Motion to Compel Arbitration. (Doc. 27).

## II. ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., generally applies to employment contracts with arbitration provisions. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019). The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010)). Parties typically do so through the inclusion of a delegation provision. "A delegation provision is 'an [antecedent] agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) (citing *Rent-A-Center*, 561 U.S. at 68). A party seeking arbitration asks the court to enforce a delegation provision so that the very issue of arbitrability is compelled to an arbitrator. *See id.* (citing *Rent-A-Center*, 561 U.S. at 68).

"The practical effect of a delegation provision is that if arbitrability is challenged, then the arbitrator, not the court, must address the challenge." *Id.* "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 530 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *accord McGee*, 941 F.3d at 866. In the Sixth Circuit, "incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton v.*

4

*Domino's Pizza Franchising, LLC*, 962 F.3d 842, 845 n.1 (6th Cir. 2020), *cert. denied sub nom. Piersing v. Domino's Pizza Franchising LLC*, 141 S. Ct. 1268 (2021); *accord Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021) ("By incorporating the AAA rules, the parties agreed that an arbitrator would decide gateway questions of arbitrability.").

The Court's first task is to determine whether the parties agreed to a valid contract containing an arbitration provision. *Great Am. Ins. Co. v. Johnson Controls, Inc.*, No. 1:20-CV-96, 2020 WL 4569126, at *6 (S.D. Ohio Aug. 7, 2020), *motion for relief from judgment denied*, No. 1:20-CV-96, 2020 WL 6073764 (S.D. Ohio Oct. 15, 2020); *accord McGee*, 941 F.3d at 865; *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Plaintiff doesn't dispute the existence of the Arbitration Agreement between herself and CIS. (Doc. 16 PageID 308); (Doc. 28 PageID 466). And the Court finds Plaintiff's argument that she does not have, and did not agree to form, an arbitration agreement with Piedmont to "be[] little more than a thinly-disguised challenge to the scope of" her Arbitration Agreement with CIS. *See Becker*, 39 F.4th at 355. Accordingly, the Court finds that a valid agreement to arbitrate exists between Plaintiff and CIS.

The Court's second task is to resolve who, the Court or an arbitrator, is responsible for determining whether Plaintiff and CIS's Arbitration Agreement covers this particular controversy or, stated differently, whether the Court or an arbitrator is responsible for determining arbitrability in this case. *See Great Am. Ins. Co.*, 2020 WL 4569126, at *6 (first quoting *Henry Schein, Inc.*, 139 S. Ct. at 527, 529; and then quoting *McGee*, 941 F.3d at 865-66); *see also McGee*, 941 F.3d at 865-66 (noting that, before resolving the scope of the agreement, the court must decide who determined arbitrability). To do so,

5

the Court must determine whether there is "clear and unmistakable" evidence in the Arbitration Agreement that Plaintiff and CIS agreed to arbitrate "arbitrability." *See Blanton*, 962 F.3d at 845. The Court finds that there is such evidence. The Arbitration Agreement's express incorporation of the AAA Rules into that agreement is sufficient evidence for this Court to find that that Plaintiff and CIS "clearly and unmistakably" agreed to arbitrate "arbitrability." *See Ciccio*, 2 F.4th at 582; *Blanton*, 962 F.3d at 845; *see also* (Doc. 12-2 Frye Decl. Ex. A PageID 56).

The Court's third task, then, is to determine whether Piedmont, as a non-signatory to the Arbitration Agreement, can enforce that agreement's delegation clause. As noted, Plaintiff argues that the dispute before the Court is one of contract formation, she did not agree to arbitrate with Piedmont, and her Arbitration Agreement with CIS does not constitute an agreement to arbitrate with Piedmont. (Docs. 16, 28). Piedmont and CIS argue that the dispute before the Court is one of contract enforceability and coverage under the Arbitration Agreement. (Docs. 12, 18, 27, 29). The distinction between whether the dispute before the Court is one of contract formation versus contract enforceability and coverage "matters, as questions pertaining to formation are reserved for the court's province, whereas those relating to enforceability and coverage are arbitrable in the presence of a valid delegation clause." *Becker*, 39 F.4th at 355. "A challenge to arbitration agreement formation is always in the jurisdiction of the courts." *Id.* (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010)). A challenge to arbitration agreement enforceability or coverage, "however, can be trifurcated into whether that challenge is to an arbitration agreement or a delegation provision within the agreement, or both." *Id.*

6

The question of whether a non-signatory can enforce an arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant, and the question of whether a non-signatory can enforce a delegation clause is likewise a question of enforceability, not existence. *Id.* at 356 (cleaned up) (first citing *Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021); and then citing *Blanton*, 962 F.3d at 845 n.1). Indeed, the Court can decide the question of whether the delegation clause is enforceable by a non-signatory only if a party challenged the enforceability of that clause "specifically." *Id.* (citing *Rent-A-Center*, 561 U.S. at 72). To make such a specific challenge in this circuit, "a party must 'show that *the basis of their challenge* is directed specifically to the delegation provision.'" *Id.* (emphasis is original) (citing *In re StockX Customer Data Sec. Breach Litiga.*, 19 F.4th 873, 886 (6th Cir. 2021)). "[A] party's challenge to a delegation clause must rest, in part, on different factual or legal grounds than the ones supporting its challenge to the arbitration agreement as a whole." *Id.* (citing *In re StockX Customer Data Sec. Breach Litiga.*, 19 F.4th at 887). Here, Plaintiff's challenge is not specific to the Arbitration Agreement's delegation provision. (Docs. 16, 28); *see Becker*, 39 F.4th at 356. Accordingly, the Court must treat the Arbitration Agreement's delegation provision as valid and must enforce it. *See Rent-A-Center*, 561 U.S. at 72; *Becker*, 39 F.4th at 356. The question of whether Piedmont can enforce the Arbitration Agreement is thus for an arbitrator to decide. *See Becker*, 39 F.4th at 356.

As a final matter, a stay of this case is appropriate as arbitration may not resolve all of the claims at issue, *e.g.*, if the arbitrator determines that the underlying dispute is not arbitrable. *See* 9 U.S.C. § 3; *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 942-43 (6th Cir. 2021); *Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 380

7

(6th Cir. 2021); *Spurlock v. Carrols LLC*, No. 1:20-CV-1038, 2021 WL 2823430, at *6 (S.D. Ohio July 7, 2021).

### III. CONCLUSION

In light of the foregoing, it is hereby **ORDERED** that Piedmont's Motion for Leave to File Supplemental Authority (Doc. 30) and Motion for Leave to File a Surreply (Docs. 31, 33) are **each GRANTED**. It is further **ORDERED** that Piedmont and CIS's respective Motions to Compel Arbitration and Stay all Proceedings (Docs. 12, 27) are **each GRANTED**. The Court **COMPELS** the parties to submit this dispute to arbitration according to the terms of their Arbitration Agreements. *Cf.* (Doc. 33-1 Ex. A PageID 520). The parties **SHALL** notify the Court within fourteen (14) days upon the conclusion of arbitration. This matter is **STAYED** pending the outcome of arbitration.

**IT IS SO ORDERED.**                                  _/s Michael R. Barrett_____
                                                        Michael R. Barrett, Judge
                                                        United States District Court